## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| BACHIR MIHOUBI, | |
|    Plaintiff. | |
| | CASE NO. _____ |
| v. | |
| LUIZ PENNA, |    Jury trial demanded |
|   Defendant | |

## **COMPLAINT**

Plaintiff Bachir Mihoubi presents his complaint against defendant Luiz Penna, alleging and praying as follows:

## Contents

**JURISDICTION AND VENUE** ........................................................................................ 2

**BACKGROUND FACTS** ................................................................................................. 4

**COUNT I** .......................................................................................................................... 16

   **Declaratory Judgment that Arbitration Agreement Does Not Exist Due to Inconsistent Court Selection Provisions in MPI Operating Agreement** ............... 16

**COUNT II (in the alternative)** ...................................................................................... 17

   **Declaratory Judgment that if Arbitration Agreement Does Exist, the Court Must Decide Which Claims Are Subject to Arbitration and which Arbitration Procedural Rules Govern** .................................................................................... 17

**COUNT III** ...................................................................................................................... 17

   **Declaratory Judgment that if an Arbitration Agreement Does Exist, Penna Did Not Comply With the Mediation Requirement Before Demanding Arbitration** .. 17

**COUNT IV** ....................................................................................................................... 18

   **Injunction and Order for Performance that Penna Indemnify Mihoubi for Violating Dispute Resolution Provisions of the MPI Operating Agreement** ........ 18

**COUNT  V** ....................................................................................................................... 19

   **Declaratory Judgment Acknowledging Penna's Violations of MPI Operating Agreement concerning Penna's failure to contribute exclusive licensing rights and competing with MPI** ................................................................................. 19

**COUNT VI**.........................................................................................................20

**Injunctive Relief to Enjoin Penna's failure to contribute to MPI exclusive
licensing rights and competing with MPI** .................................................20

**COUNT VII** .......................................................................................................21

**Declaratory Judgment Acknowledging Penna's Breach of His Duty to Loyalty to
MPI in Causing 819 Canada to Reduce Royalty Payments to MPI.** ......................21

**COUNT VIII** ......................................................................................................22

**Injunctive Relief to Enjoin  Penna from Breaching his Duty to Loyalty to MPI in
Causing 819 Canada to Reduce Royalty Payments to MPI.** ...................................22

**COUNT IX** .........................................................................................................23

**Declaratory Judgment Acknowledging Penna's Violation of MPI's Operating
Agreement by purporting remove Mihoubi as member and officer.** ......................23

**COUNT X** ..........................................................................................................25

**Injunction enjoining Penna from exercising rights as the purported sole member,
operating manager, or other officer of MPI.** ...............................................25

**COUNT XI** .........................................................................................................25

**Declaratory Judgment To Acknowledge that Mihoubi Exercised Reasonable
Business Judgment and is Entitled to Reasonable Compensation and
Reimbursement of Expenses** ...................................................................25

**COUNT XII** .......................................................................................................27

**Declaratory Judgment To Acknowledge that Penna Must Indemnify Mihoubi for
Each Violation of the MPI Operating Agreement.** ..........................................27

**PRAYER FOR RELIEF**.....................................................................................28

## JURISDICTION AND VENUE

1.  Plaintiff Bachir Mihoubi ("Mihoubi") is a citizen of the State of Georgia.

2.  Luiz Penna ("Penna") is a citizen of the Commonwealth of Puerto Rico.

3.  For purposes of the Court's diversity jurisdiction, the Commonwealth of Puerto
Rico is a State. 28 U.S.C. Sec. 1332(e).

4.  This complaint concerns a civil action where the matter in controversy exceeds the
sum or value of $75,000, exclusive of interest and costs, and is between citizens of different
States.

5.  Therefore, the Court has diversity jurisdiction under 28 U.S.C. Sec. 1332.

6.  Regarding venue, the parties have also contractually agreed to bring lawsuits and litigation in Puerto Rico under an operating agreement of Mr. Pretzels International, LLC, a Georgia limited company ("MPI") dated August 21, 2006. A copy of the MPI Operating Agreement is attached as **EXHIBIT A**.

7.  In this regard, Section 6.13 of the MPI Operating Agreement states in relevant part:

> A Member may be removed at any time ( 1 ) … (2) should a court of law of the Commonwealth or [sic] Puerto Rico find that a Member failed to contribute to the Company as set forth in Section 4. 1 . hereof.

8.  Further, Section 12.27 states of the MPI Operating Agreement states:

> Should a lawsuit be necessary to enforce this Operating Agreement the parties agree that jurisdiction and venue shall be in San Juan , Puerto Rico.

9.  Moreover, Section 12.29 of the MPI Operating Agreement states in relevant part:

> Each Member shall have the right to petition any court of the Commonwealth of Puerto Rico (1) to acknowledge a violation hereof, or (2) to enjoin a violation or order the performance hereof, including, without limitations, Sections 4.1 and 6.13.

10. Section 12.11 of the MPI Operating Agreement also contains mediation and arbitration provisions that are inconsistent with the cited provisions providing for "a lawsuit" and adjudication by a "court."

11.  Until this Court determines otherwise, Mihoubi maintains that the contradictory court selection provisions negate the existence of an arbitration agreement.

12. The preceding allegation challenges the arbitration clause *itself* as well as any "delegation provision" purporting to submit questions of arbitrability to an arbitrator.

13.  Even if an arbitration agreement exists, only this Court, not an arbitrator, may decide whether any specific claim must be resolved by court adjudication or arbitration (questions of arbitrability).

14. Such is the case because the parties did not by "clear and unmistakable" evidence delegate questions of arbitrability to an arbitrator. *See* <u>Henry Schein, Inc. v. Archer & White Sales, Inc</u>., 139 S.Ct. 524, 530 (2019) holding: "This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by **"clear and unmistakable" evidence**. (Emphasis added. Citations omitted).

## BACKGROUND FACTS

15.  MPI is engaged in the development and operation of franchises for the sale of Mr. Pretzels-branded products in various countries, including Canada.

16. Under the MPI Operating Agreement, Penna and Mihoubi are the only two members of this Georgia limited liability company.

17.  Penna has 51% Percentage Equity Interest and Mihoubi has 49% Percentage Equity Interest as defined by Section 3.10 of the MPI Operating Agreement.

18.  In addition, Mihoubi is the Operating Manager, Company Secretary, and Company Treasurer under Section 6.1 of the MPI Operating Agreement.

19. MPI performs its activities using a license agreement dated August 21, 2006 granting "exclusive, royalty free, perpetual, irrevocable" rights to use Mr. Pretzels trademarks and pretzel mix. See Section 2.1 of the license agreement ("<u>MPI License Agreement</u>"), a copy of which is attached as **EXHIBIT B**.

20. Penna and Goodies, Inc., a Puerto Rico corporation wholly owned by Penna, entered into the MPI License Agreement as part of Penna's capital contribution to MPI.

21. Specifically, Section 4.1 of the MPI Operating Agreement states in relevant part:

> Luiz A. Penna shall contribute to the Company, or cause Goodies, Inc. to contribute to the Company, the exclusive license rights to use the trademarks and brand name of "Mr. Pretzels" and "Oh! My Pretzels". Luiz A. Penna shall also contribute by granting the Company, and/or causing Goodies Inc. to grant to the Company, the right to use the pretzels mix for the dough necessary to make the pretzels to be sold in the stores owned and operated by the Company as well as the ones operated by franchisees.

22. Separately, Section 6.9 of the MPI Operating Agreement states: "Each Member, including the Operating Manager, shall have the right to engage in other activities and businesses, **excluding those that compete with the business of the Company**." (Emphasis added).

23. In turn, Section 12.6 of the MPI Operating Agreement states:

> Any new idea, invention, improvement, patentable, trademarkable or copyrightable work created by or developed in whole or in part by a Member related to the business of the Company or at the request of the Company, will promptly be disclosed and explained by Member to the Company, and all rights to such ideas, inventions, improvements, patentable, trademarkable or copyrightable works shall be promptly assigned by the Member to the Company without additional compensation.

24. In addition, Section 12.9 of the MPI Operating Agreement states:

> During the ownership of an equity interest in the Company, and upon the sale or transfer of Member's equity interest, Member shall not for a period of three (3) years after such ownership of equity interest in the Company:
>
> > **12.9.1** directly or indirectly, with or without compensation, engage in, be employed by or have any interest (whether as Member, director, officer, employee, subcontractor, partner, consultant, proprietor, agent or otherwise) in any business, company or firm engaged in a business similar to the Company within the territories where the Company owns and operates or franchise stores. [....]

25.  Penna breached his duty under Section 4.1 to contribute the exclusive license rights under MPI License Agreement, as well as the other cited provisions involving competition with the company.

26.  Specifically, effective December 14, 2023, Penna caused Goodies, Inc., his wholly owned corporation, to sign a license agreement with 9142-8136 Quebec, Inc. ("914 Quebec"), a Canadian corporation.

27.  This license agreement (the "914 Quebec License Agreement") is attached as **EXHIBIT C**.

28.  Through the 914 Quebec License Agreement, Penna has caused business and sales in Canada to be diverted away from MPI. This business generates revenues would otherwise be available for distributions to Mihoubi as a member of MPI. In addition, its revenue would directly increase the value of his interest in MPI as later described.

29.  The 914 Quebec License Agreement positions Penna to personally profit at the expense of Mihoubi from sales by Costco and other retailers in Canada of Mr. Pretzels products.

30.  As provided by Section 12.9.1, however, whether Penna received "compensation" is irrelevant to whether he breached his non-competition duty.

31.  Upon information and belief, Mr. Pretzels products are being sold in least 23 locations in Quebec and Ontario.

32.  Direct injury to Mihoubi has occurred because Penna has caused business in Canada to be diverted from MPI, which business would generate profits for distribution to Mihoubi as a member of MPI.

33. Before and after consummating the 914 Quebec License Agreement, Penna repeatedly assured Mihoubi that his interest in MPI would be protected by a subsequent contract.

34. The terms of said contract were not defined, and Penna used vague promises to string Mihoubi along until it was clear that Penna would never fulfilled his promise.

35. Instead, Penna began desperate maneuvering to deal with the flagrant breach of the MPI Operating Agreement and diversion of income that would have been shared with Mihoubi in the form of distributions from MPI.

36. Initially, Penna requested that Mihoubi consent to an amendment of the MPI Operating Agreement and MPI License Agreement to abridge the licensing rights from Goodies and Penna.

37. When Mihoubi refused, Penna began a frenzied search for "cause" to remove Mihoubi has a member of MPI.

38. Initially, Penna accused Mihoubi of failing to fulfill his duties in support of the franchise operations. Nonetheless, while Penna made these accusations, he allowed Mr. Pretzels' website to glow with praises about Mihoubi's expertise and executive skills.[1]

39. In August 2024, recognizing that his 19-year relationship with Penna was quickly deteriorating and rejecting that any "cause" existed to remove him, Mihoubi entertained an

---

[1] Mr. Petzels website said the following:

> Mihoubi is a world-renowned franchise expert who came onboard in 2006 to build a solid international franchising program. His main focus is the franchise partner profitability and success. Mr. Mihoubi built a franchising team that developed the brand in numerous markets all over the world, in Europe, the Middle East, the Caribbean, Latin America and North America. With his international experience and passion for the brand and the excellent Operations Team located in various regions in the world, he has increased the number of units to over 200 stores in over 20 countries.

http://www.mrpretzels.com/about-us/ (viewed May 23, 2025).

offer by Penna to purchase his interest in MPI using the Fair Value formula in Section 3.4 of the MPI Operating Agreement.

40.  In an email dated August 15, 2024, attached as **EXHIBIT D**, Penna agreed that the Fair Value of Mihoubi's interest based on MPI's profit during 2023 was at least $617,400.

41.  The purchase price was derived by applying the formula in Section 3.4 of MPI Operating Agreement to MPI's net income.

42. A significant portion of MPI's revenue came from royalty payments paid by 8199221 Canada, Inc. ("819 Canada"), a Canadian corporation.

43. 819 Canada's shareholders are Carmine Di Fruscia with 51%, Penna with 34.5%, and Mihoubi with 14.5%.

44.  819 Canada and its "Sublicensees" are required to pay royalties from franchise activities in Canada "directly to Mr. Pretzels International, LLC" under by two inter-related agreements: (1) Mr. Pretzels International, LLC International Development Rights Agreement dated September 1, 2017 and (2) the Amended Sublicence Agreement with the same date.

45.  ***Each month for more than five years***, Penna and Mihoubi received reports of 819 Canada's royalty payments to MPI.

46.  Until December 2024, Penna ***never*** questioned or objected to royalty payments to MPI.

47. After MPI deducted operational expenses, MPI remitted 51% to Penna and 49% to Mihoubi as distributions based on MPI's net income.

48.  After agreeing in August 2024 that Mihoubi's interest in MPI was worth $617,400, Penna added material terms to his original offer.

49. The effect of these additional terms limited the value of Mihoubi's interest 819 Canada, which was not part of the original deal.

50.  Through counsel on August 23, 2024, Mihoubi rejected Penna's counteroffer by the email attached as **EXHIBIT E**.

51.  In addition to rejecting Penna's counteroffer, Mihoubi renewed his objection to the 914 Quebec License Agreement and the sales through Costco that Penna had engineered and that violated his duty not to compete with MPI.

52.  After negotiations failed, Penna then resumed frantic efforts to force Mihoubi out of MPI.

53.  Starting in December 2024, Penna caused Di Fruscia, 819 Canada's majority shareholder and president, to drastically reduce and recharacterize the royalty payments from 819 Canada to MPI.

54. In turn, this reduced the distributions payable by MPI to Mihoubi.

55.  Of course, 819 Canada's reduced payments to MPI would also directly lower the Fair Value of Mihoubi's Percentage Equity Interest in MPI under Section 3.4 of MPI's Operating Agreement.

56.  Mihoubi repeatedly protested and demanded that Penna cause 819 Canada to restore the prior levels of royalty payments.

57.  In addition, recognizing that his prior accusations had no substance, Penna began requesting bank records and tax records which Penna had already received or had had free access for years.

58.  By way of background, shortly after the start of the 2020 corona virus pandemic, Penna and Mihoubi had specific conversations about applying for the federal government Payroll Protection Program ("PPP") loans for MPI as well as Penna's wholly owned Puerto Rico corporation, Mr. Pretzels International, Inc. ("MPII").

59.  Penna agreed that MPI would apply for a PPP loan.

60.  Corroborating this fact, both MPI and MPII, obtained PPP loans just days apart. According to public records, MPII's PPP loan for $55,484 was approved on April 28, 2020, while MPI's PPP loan for $51,666, was approved three days later on May 1, 2020.

61.  MPI's PPP loan was forgiven in the amount of $17,917 and the balance of $34,621.23 treated as a term loan at 1.00% interest payable in monthly installments by May 4, 2025.

62. See redacted statement of Bank of America dated November 14, 2022 attached as **EXHIBIT F**.

63.  Mihoubi provided Penna's counsel, Luis Llach, with requested bank and tax records on March 15, 2025.

64.  On April 8, 2025, attorney Victor O. Acevedo, who works in the same law firm as Mr. Llach, sent Mihoubi's counsel the letter attached as **EXHIBIT G.**

65.  Mr. Acevedo claimed that MPI's PPP was not properly authorized by Penna and demanded records about the loan.

66.  Mr. Acevedo never had any prior contact with Mihoubi or Mihoubi's counsel regarding MPI.

67.  Mr. Llach was the only contact for Mihoubi's counsel concerning MPI.

68. Mr. Acevedo is a former federal prosecutor for the United States government in the District of Puerto Rico.[2]

69. The criminal case in United States v. Candelario-Santana, No. 09-427 (FAB), 2023 U.S. Dist. LEXIS 120941 (D.P.R. July 12, 2023) indicates that Mr. Acevedo was prosecuting cases in this Court as recent as July 18, 2023.

70. Mr. Acevedo likely still has personal contacts with federal prosecutors in the U.S. Attorney's Office in Puerto Rico.

71. Mr. Acevedo's letter to Mihoubi's counsel stated in pertinent part:

> PPP loans can be used for payroll costs, rent and mortgage interests, and utility costs caused by the COVID-19 pandemic. Improper use of a PPP loans, however, could constitute violations of federal-criminal law under 18 U.S.C. §§ 641 (stealing public money), 1343 (wire fraud), and 1956 (money laundering).

72. Mr. Acevedo demanded the PPP records within seven business days and threatened "legal action" if not provided by the deadline.

73. On May 2, 2025, Mr. Llach wrote to Mihoubi's counsel couching his statements as a "Settlement Communication Subject to Rule 408," and saying in relevant part:

> [B]y causing MPI to take out a PPP loan without the authorization of Penna as the member with the majority equity interest, Mihoubi could have implicated Penna, who did not authorize this and only found out through a review of MPI's bank statements, **in criminal activity. Without lodging accusations of fraudulent criminal wrongdoing against Mihoubi, I'm sure you are aware of federal authorities charging hundreds of individuals for obtaining PPP loans through fraudulent misrepresentations**. The mere appearance of impropriety considering MPI's lack of employees and Mihoubi's failure to consult Penna years before the ongoing dispute came to light, **as well as the potential risk of having to answer to federal authorities as a member of MPI in connection with Mihoubi's PPP loan, are aspects Penna does not take lightly. Improper use of PPP loans could constitute violations of federal-criminal law under 18 U.S.C. § 641 (stealing public money), 1343 (wire fraud), and 1956 (money laundering).** What is to say federal

---

[2] https://cstlawpr.com/our-attorneys/victor-o-acevedo-hernandez/ (Last viewed June 11, 2025).

authorities could not potentially implicate Penna, just by virtue of being a member of an LLC without payroll or employees, in fraudulent activity connected to this PPP loan taken by Mihoubi without any authorization or Penna's knowledge. [Emphasis added].[3]

74.  A redacted copy of select pages of Llach's May 2 letter is attached as **EXHIBIT H**.

75.  Recall that Penna's initial offer in August 2024 to purchase Mihoubi's interest in MPI was $617,400. (**EXHIBIT D**).

76.  Penna now asked for "a full and mutual release" and offered the paltry sum of $109,000 for Mihoubi's interest in MPI as well as 819 Canada and "in [sic] entity associated with Penna and/or Goodies which Mihoubi asserts he has a rightful direct or indirect ownership stake or interest."

77.  The purpose of citing federal criminal statutes in Acevedo's and Llach's letters is self-evident.

78. They attempted to threaten, intimidate and coerce Mihoubi into giving up his property to Penna for grossly deficient consideration.

79.  Penna conspired and acted in concert with Messrs. Acevedo and Llach, and the two letters constitute a pattern and practice and a continuing scheme to threaten Mihoubi with criminal liability unless he gives up investments related to MPI for a grossly deficient amount.

---

[3] Given the nature of the communication, Mihoubi denies that it is entitled to exclusion from evidence under Fed. R. Evid. 408. The same would be true of a communication veiled as a settlement negotiation that essentially says: "Unless you pay us $xxx, your house could burn down. We're not saying that's going to happen. But it could."

80. Having been a federal prosecutor in Puerto Rico less than two years before his April 8 letter regarding the PPP loan, Mr. Acevedo enlistment by Mr. Llach was calculated to heighten the threat and intimidation directed at Mihoubi.

81. Mr. Llach's May 2 letter left no doubt and confirmed the plan to use threatened criminal liability to pressure Mihoubi into parting with his property.

82. Mr. Llach's May 2 letter made additional claims as well that Mihoubi had engaged in "misappropriation" of MPI funds.

83. Regarding claims of "misappropriation," Penna took the extreme position that all amounts paid by MPI from 2020 to February 2025 to Mihoubi were "distributions" from MPI's net income after expenses.

84. Consequently, Penna believes that Mihoubi was entitled to no compensation for his services as Operating Manager or reimbursement of expenses.

85. In addition, in a radical departure from more than five years of past conduct, Penna argued that 819 Canada had improperly paid MPI and that these payments were actually **dividends** that 819 Canada owed to Penna and Mihoubi as a shareholders of 819 Canada.

86. Using unprecedented interpretations of the contractual relationships between the relevant persons and entities, Penna also blamed Mihoubi for overvaluing his Equity Interest in MPI and misappropriating more than $200,000 over a period exceeding five years.

87. On May 6, 2025, Mihoubi's counsel partially responded to Llach's May 2 letter; he specifically objected to Acevedo's and Llach's thinly veiled threats of criminal charges related to the PPP loan. Mihoubi's counsel stated he would later respond to the rest of Mr. Llach's May 2 letter. See May 6 email from David Martin attached as **EXHIBIT I.**

88.  On May 27, 2025, Mihoubi's counsel responded in detail to the other portions to Mr. Llach's May 2 settlement offer. The response consisted of 14 pages, single-spaced, with screenshots of tax returns, numerous financial reports, and citation to legal authorities. A redacted copy of select pages of the May 27 letter is attached as **EXHIBIT J**.

89.  Later the **same day**, ignoring the substance, facts, and legal authorities presented by Mihoubi's counsel's May 27 settlement letter, Penna took two actions.

90.  First, he directly sent a "Written Consent" dated May 27, 2025 to Mihoubi purporting to remove Mihoubi as a member for cause under Section 6.13 of MPI's Operating Agreement and from his positions as Operating Manager and his other officer positions. See Written Consent of the Member Holding the Majority (51%) of Mr. Pretzel's International Equity Interest attached as **EXHIBIT K**.

91.  On its face, the "Written Consent" is invalid because Section 6.13 requires "a vote of the majority of all Members eligible to vote," not a majority of the Percentage Equity Interest.

92.  Second, Penna on May 27 wrote directly to Mihoubi with a demand for mediation under Section 12.11 of the MPI Operating Agreement.  A copy of Penna's mediation demand is attached as **EXHIBIT L**.

93.  Penna demanded a response within "ten (10) business days" regarding the proposed mediator, Bryan Tester.[4]

94.  Penna's ten business day deadline would have expired on **June 9, 2025.**

_____

[4]  Section 12.11 requires a "court certified mediator". Penna provided no reference to determine that Mr. Tester was "court certified."

95. Under Section 12.11 of the MPI Operating Agreement, the parties must first negotiate "using good faith" and if they are still unable to resolve their disputes, they "shall…refer [the dispute] to a court certified mediator." (**EXHBIT A**).

96. However, as noted, Penna did **not** respond at all to Mihoubi's settlement communication on May 27, 2025. (**EXHBIT J**).

97. Moreover, even though Penna's self-declared deadline of **June 9, 2025** to select a mediator had **not** expired, Penna skipped mediation and demanded **arbitration** on **June 5, 2025**. *See* June 5, 2025 Formal Demand for Arbitration Pursuant to Section 12.11.2 of the Operating Agreement of Mr. Pretzels International, LLC attached as **EXHBIT M**.

98. Penna's conduct violates the MPI Operating Agreement, shows bad faith, and has purpose of overwhelming Mihoubi with legal expenses.

99. Separately, upon information and belief, Penna has the means and power to restore the levels of royalty payment made by 819 Canada to MPI prior to December 2024.

100. Likewise, Penna has the means and power to fully account for all transactions that he facilitated through Goodies, Inc., his wholly owned corporation, in Canada involving Costco and other sellers in Canada benefiting from the 914 Quebec License Agreement.

101. Penna must also indemnify Mihoubi for his efforts to enforce the MPI Operating Agreement, including the procedural rights to an orderly resolution of disputes.

102. Specifically, Section 7.3 of the MPI Operating Agreement states in pertinent part:

> Any Member who is in violation of this Operating Agreement agrees to indemnify and hold the Company and the Other Members harmless from all costs and expenses, including reasonable attorneys' fees (whether or not mediation, arbitration or suit is instituted and if mediation, arbitration or suit

is commenced, attorneys' fees at the trial and appellate levels) and court costs, incurred by the Company and/or Other Members as a result of the violation of this Operating Agreement.

## COUNT I

### Declaratory Judgment that Arbitration Agreement Does Not Exist Due to Inconsistent Court Selection Provisions in MPI Operating Agreement

103.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

104.      28 U.S.C. Sec. 2201(a) states in pertinent part:

In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

105.     Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court for declaratory judgment to acknowledge violations by Penna of the MPI Operating Agreement.

106.     Penna's arbitration demand raises an actual controversy between the parties.

107.     The provisions requiring court adjudication of disputes in Sections 6.13, 12.27, and 12.29 of the MPI Operating Agreement cannot be reconciled with the arbitration provisions in Section 12.11.

108.     Moreover, the arbitration provision does not adopt the arbitration rules of any arbitration tribunal. Section 12.11.2 merely states that if the parties do not agree upon an arbitrator, "the arbitrator shall be provided by the American Arbitration Association."

109.     This ambiguity may make arbitration impracticable.

110.     Apart from differing rules applying to different types of disputes, the American Arbitration Association charges significant fees for which there has been no

express consent by Mihoubi. This is an additional ground for finding that no arbitration agreement exists.

111.    Therefore, no arbitration agreement exists, and disputes concerning the MPI Operating Agreement must be decided by this Court.

### COUNT II (in the alternative)
### Declaratory Judgment that if Arbitration Agreement Does Exist, the Court Must Decide Which Claims Are Subject to Arbitration and which Arbitration Procedural Rules Govern

112.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

113.    Alternatively, if the Court finds that an arbitration agreement does exist, then the Court, not an arbitrator, must decide whether any specific claim by either party is subject to arbitration.

114.    The parties have **not** agreed by clear and unmistakable evidence to arbitrate questions of arbitrability.

115.    Said differently, this Court must decide questions of arbitrability of any claim by the parties.

116.    In addition, because no arbitration forum was clearly adopted, this Court would have to provide the rules for the arbitration process.

### COUNT III
### Declaratory Judgment that if an Arbitration Agreement Does Exist, Penna Did Not Comply With the Mediation Requirement Before Demanding Arbitration

117.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

118.     Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court for declaratory judgment to acknowledge the following violations by Penna of the MPI Operating Agreement:

119.     Under Section 12.11, prior to demanding arbitration, the parties were required to use good faith and refer the matter to a court certified mediator.

120.     At all times, Mihoubi negotiated in good faith, but Penna did not.

121.     Penna provided no response whatsoever to Mihoubi's detailed settlement communication on May 27, 2025. (**EXHIBIT J**).

122.     Instead, on the **same day,** Penna demanded mediation. (**EXHIBIT L**).

123.     Penna then unilaterally violated his own of **June 9, 2025** deadline for the selection of a mediator.

124.     Completely sidestepping mediation, Penna demanded arbitration on **June 5, 2025**, four days before the deadline to appoint a mediator. (**EXHIBIT M**).

125.     The MPI Operating Agreement states clearly that unresolved disputes "shall be…[r]eferred to a court certified mediator…." (**EXHIBIT A**, Sec. 12.11).

126.     The term "shall" means the requirement is mandatory. Smith v. Spizzirri, 601 U.S. 472, (2024) ("the use of "shall' ... created a mandatory obligation that left 'no place for exercise of discretion by a district court.'...") (citation omitted).

127.     Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

## COUNT IV
### Injunction and Order for Performance that Penna Indemnify Mihoubi for Violating Dispute Resolution Provisions of the MPI Operating Agreement.

128.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102, 104, and 117-126 as though fully set forth herein.

129.     Because Penna did not comply with the preconditions to arbitration, Mihoubi requests that the Court enjoin the arbitration demanded by Penna on June 5, 2025.

130.     In addition, Mihoubi has incurred significant legal expenses to comply with the dispute resolution provisions of the MPI.

131.     Under Section 7.3 of the MPI Operating Agreement, Penna must indemnify Mihoubi for his violation by failing to comply with the mediation requirement and then prematurely demanding arbitration.

132.     Mihoubi requests that the Court order Penna to perform his duty to indemnify Mihoubi for the fees and expenses he incurred in having to bring this action to enforce these requirements of the MPI Operating Agreement.

## COUNT  V

### Declaratory Judgment Acknowledging Penna's Violations of MPI Operating Agreement concerning Penna's failure to contribute exclusive licensing rights and competing with MPI

133.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

134.     Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court for declaratory judgment to acknowledge the following violations by Penna of the MPI Operating Agreement:

135.     By causing Goodies, Inc., Penna's wholly owned corporation, to enter into the 914 Quebec License Agreement effective December 14, 2023, Penna breached Section

4.1 of the Operating Agreement by failing to contribute the exclusive license and rights to Mr. Pretzels trademarks, brands, and pretzel mix.

a)  By failing to contribute the exclusive license rights under Section 4.1, Penna is subject to removal as a member under Section 6.13 of MPI Operating Agreement.

b)  By causing Goodies, Inc. to enter into the 914 Quebec License Agreement, Penna has breached his duty under Section 6.9 by "compet[ing] with the business of the Company."

c)  By causing Goodies, Inc. to enter into the 914 Quebec License Agreement, Penna has breached his duty under Section 12.6 to "promptly assign[]"  "[a]ny new idea" to MPI for the sale of products in Canada.

d)   By causing Goodies, Inc. to enter into the 914 Quebec License Agreement, Penna has breached his duty under Section 12.9 because Penna "directly or indirectly" has an interest "in a business similar to the Company within the territories where the Company owns and operates franchise stores."

136.     Mihoubi petitions that each of the Court's acknowledgments be entered by declaratory judgment, binding Penna in this Court and in any arbitration should the Court finds that an arbitration agreement exists and that further relief beyond the Court's declaratory judgment are arbitrable.

137.     Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

## COUNT VI
### Injunctive Relief to Enjoin Penna's failure to contribute to MPI exclusive licensing rights and competing with MPI

138.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

139.    Penna's violations of the MPI Operating Agreement are causing irreparable harm to Mihoubi; legal remedies are inadequate because monetary damages are difficult to ascertain; the balance of equities is in favor of Mihoubi, and there will be no harm to the public interest by enjoining Penna from his continuing violations.

140.    Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court to enjoin Penna from continuing to violate the MPI Operating Agreement and to order the Penna perform as follows:

a)   Penna shall cause Goodies, Inc., his wholly owned corporation, to account for, turn over, and assign to MPI all the rights and benefits received or owed in the future from the 914 License Agreement, including any rights and benefits pertaining to any and all sales by Costco in Canada and any other territory where MPI does business.

b)   Penna shall immediately cease from, directly or indirectly, competing with MPI in Canada and shall turn over, account for, and assign any rights and benefits received or owed in the future from competing with MPI in Canada and any other territory where MPI does business.

141.    Mihoubi respectfully requests that the Court enter a permanent injunction against Penna ordering him to perform the acts described in the preceding paragraph.

**COUNT VII**
**Declaratory Judgment Acknowledging Penna's Breach of His Duty to Loyalty to MPI in Causing 819 Canada to Reduce Royalty Payments to MPI.**

142.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

143.    Penna's acceptance and retention of distributions from MPI prior to December 2024 shows that he adopted the interpretation given by MPI and 819 Canada as to the royalty rate due under MPI's International Development Rights Agreement and the Amended Sublicence Agreement.

144.    Under Section 12.22 of the MPI Operating Agreement: "Members of this Company have a duty of undivided loyalty to this Company in all matters affecting this Company's interests."

145.    By causing the reduction of royalty payments from 819 Canada to MPI starting in December 2024, Penna breached this duty of loyalty.

146.    Penna's breach specially harmed Mihoubi because Mihoubi's distributions from MPI directly depend upon the full receipt of the royalties from 819 Canada.

147.    In addition, the Fair Value of Mihoubi's Equity Interest under Section 3.4 directly depends on 819 Canada's royalty payments to MPI.

148.    Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court for declaratory judgment to acknowledge that Penna violated his duty of loyalty under Section 12.22  and thereby caused Mihoubi financial injury in an amount to be determined by discovery.

149.    Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

**COUNT VIII**

**Injunctive Relief to Enjoin  Penna from Breaching his Duty to Loyalty to MPI in Causing 819 Canada to Reduce Royalty Payments to MPI.**

150.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

151.     Penna's breach of his duty of loyalty under Section 12.22 is causing irreparable harm to Mihoubi; legal remedies are inadequate because monetary damages are difficult to ascertain; the balance of equities is in favor of Mihoubi, and there will be no harm to the public interest by enjoining Penna from his continuing violations.

152.     Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court to enjoin Penna from continuing to violate his duty to loyalty and to order the Penna perform as follows: Penna should take all reasonable steps and actions to cause 819 Canada to restore the royalty rate used prior to December 2024 for all royalty payments made by 819 Canada to MPI.

153.     Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

### COUNT IX
### Declaratory Judgment Acknowledging Penna's Violation of MPI's Operating Agreement by purporting remove Mihoubi as member and officer.

154.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

155.     Penna's "Written Consent" dated May 27, 2025 (**EXHIBIT K**) purporting to remove Mihoubi as a Member and as the Operating Manager and from his other official titles is invalid.

156.     Section 6.13 of the MPI Operating Agreement states that a member's removal for "cause" requires "a vote of a majority of all Members eligible to vote."

157.     First, there is no "cause" to remove Mihoubi.

158.    Second, since MPI has only two members, both members are required to form "a majority of all Members."

159.    In addition, because Penna committed multiple breaches of the MPI Operating Agreement for his personal financial gain, Penna has a conflict of interest under OCGA Sec. 14-11-101(3) in seeking to remove Mihoubi.[5]

160.    The conflict made him ineligible to vote under OCGA Sec. 14-11-307 in this internal affair of a Georgia limited liability company.

161.    Moreover, Penna's self-interested objective of eliminating Mihoubi in order to shield himself from liability to MPI is not the best interest of the company.

162.    Separately, the purported action to remove Mihoubi as Operating Manager was also invalid.

163.    In this regard, Section 6.1 of the MPI Operating Agreement states: "The Members agree they shall vote their Percentage Equity Interests in the Company to provide that the following individuals to be Managers in the capacities indicated:  Operating Manager: Bachir Mihoubi; Company Secretary: Bachir Mihoubi; Company Treasurer: Bachir Mihoubi."  (**EXHIBIT A** p. 8).

164.    Even if Penna were the sole owner of Mihoubi's interest, the cited provision stops him from removing Mihoubi for these positions.

165.    Moreover, the "Written Consent" states no sum of money to be paid to Mihoubi; rather, it contains a vague reference to an undefined sum being held in "escrow." (**EXHIBIT K** p. 2).

---

[5] References to OCGA are to the Official Code of Georgia Annotated.

166.    Penna cannot purport to have acquired Mihoubi's interest in MPI without paying for it. *See* OCGA Sec. 14-11-1002(a)(5) stating in relevant part: "[A] record member of the limited liability company is entitled to dissent from, and obtain payment of the fair value of his or her membership interest…."

167.    Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

### COUNT X

### Injunction enjoining Penna from exercising rights as the purported sole member, operating manager, or other officer of MPI.

168.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

169.    As shown in the preceding count, Penna's actions to remove Mihoubi are invalid.

170.    Attempts by Penna to exercise sole authority over MPI will cause irreparable harm to Mihoubi; legal remedies are inadequate because monetary damages are difficult to ascertain; the balance of equities is in favor of Mihoubi, and there will be no harm to the public interest by enjoining Penna from his continuing violations.

171.    Penna has demonstrated a serious disregard of Mihoubi's rights and Penna's duties under the MPI Operating Agreement.

172.    Under Section 12.29 of the MPI Operating Agreement, Mihoubi hereby petitions this Court to enjoin Penna from attempting to exercise sole authority of MPI.

### COUNT XI
### Declaratory Judgment To Acknowledge that Mihoubi Exercised Reasonable Business Judgment and is Entitled to Reasonable Compensation and Reimbursement of Expenses

173.    Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

174.    Mihoubi performed his duties as a Member and the Operating Manager in a manner that he reasonably believed to be in the best interests of the Company and with such care as an ordinarily prudent person in like position would use under similar circumstances.

175.    Having met this standard of conduct under Section 6.10 of the MPI Operating Agreement, Mihoubi is not liable to Penna in any way.

176.    Mihoubi requests declaratory judgment acknowledging that Penna is violating Section 6.10 of the MPI Operating Agreement by seeking to hold Mihoubi liable for reasonable business judgment.

177.    Separately, since 2006, Mihoubi, who is also a licensed attorney. has devoted significant time and provided vital executive and professional services to MPI, including preparing franchise agreements and disclosure documents, facilitating and monitoring the registration of trademarks worldwide, developing and producing training, operations, and brand manuals, and providing IT management services as well.

178.    Section 6.5 of the MPI Operating Agreement states:  "The salaries of Managers may be fixed from time to time by the Members."

179.    Meanwhile, Section 12.24 provides: "Members shall receive reimbursement for expenses reasonably incurred in the performance of their duties."

180.    Thus, for his services as Operating Manager, Mihoubi was and is entitled to reasonable compensation. As a member, he was and has the right to reimbursement of his expenses.

181.     However, by characterizing all payments from MPI to Mihoubi as "distributions," Penna refuses to acknowledge that Mihoubi had these rights.

182.     Thus, Mihoubi requests a declaratory judgment acknowledging that Penna has violated Sections 6.5 and 12.24 by refusing to acknowledge Mihoubi's right to compensation and the reimbursement of expenses.

183.     The declaratory judgment should also acknowledge that even if there were no contractual right to compensation for his services, Mihoubi would be entitled to the fair value of his services by operation of law or equity.  *See* OCGA Sec. 9-2-7 and Article 1384, Puerto Rico Civil Code, 31 LPRA Sec. 10301.

184.     Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

## COUNT XII
### Declaratory Judgment To Acknowledge that Penna Must Indemnify Mihoubi for Each Violation of the MPI Operating Agreement.

185.     Mihoubi realleges and incorporates by reference paragraphs 1 through 102 and 104 as though fully set forth herein.

186.     Mihoubi requests a declaratory judgment acknowledging that Penna has violated the MPI Operating Agreement as alleged in all counts of this complaint and that he must indemnify Mihoubi and hold him harmless as required by Section 7.3 for such violations.

187.     Accordingly, Penna must reimburse Mihoubi for all of his costs and expenses, including reasonable attorney fees whether or not mediation, arbitration, or suit was instituted.

188.     Mihoubi requests that until the Court enters such declaratory judgment, that any arbitration proceedings be stayed.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Bachir Mihoubi demands a jury trial and respectfully requests the following relief:

1. Under Count I:  Declare that no arbitration agreement exists due to irreconcilable court selection provisions in Sections 6.13, 12.27, and 12.29 of the MPI Operating Agreement, requiring disputes to be resolved by the Court.

2. In the alternative, under Count II: Declare that, if an arbitration agreement exists, the Court, not an arbitrator, must determine which claims are subject to arbitration, as the parties did not delegate arbitrability questions to an arbitrator by clear and unmistakable evidence. The Court should also provide the rules for the arbitration process.

3. Under Count III: Declare that Penna violated Section 12.11 of the MPI Operating Agreement by failing to negotiate in good faith and bypassing mandatory mediation before demanding arbitration on June 5, 2025.

4. Under Count IV: Enjoin Penna's June 5, 2025 arbitration demand and order Penna to indemnify Mihoubi for legal fees and expenses incurred due to Penna's failure to comply with mediation requirements, per Section 7.3.

5. Under Count V: Declare that Penna breached Sections 4.1, 6.9, 12.6, and 12.9 by causing Goodies, Inc. to enter the 914 Quebec License Agreement, failing to contribute exclusive licensing rights, and competing with MPI.

6. Under Count VI: Enjoin Penna from continuing to violate the MPI Operating Agreement, order Penna to cause Goodies, Inc. to assign all rights and benefits from the

914 Quebec License Agreement to MPI, and prohibit Penna from competing with MPI in Canada or other MPI territories.

7.  Under Count VII: Declare that Penna breached his duty of loyalty under Section 12.22 by causing 819 Canada to reduce royalty payments to MPI starting in December 2024, harming Mihoubi's distributions and equity value.

8.  Under Count VIII: Enjoin Penna from breaching his duty of loyalty and order him to take reasonable steps to restore 819 Canada's royalty payments to MPI to pre-December 2024 levels.

9.  Under Count IX: Declare that Penna's May 27, 2025 "Written Consent" to remove Mihoubi as a member and officer is invalid under Section 6.13, as it lacks a majority vote of eligible members, and under Section 6.1, due to Penna's conflict of interest and failure to pay for Mihoubi's interest.

10. Under Count X: Enjoin Penna from exercising sole authority over MPI as a purported sole member or officer, as his removal actions are invalid and cause irreparable harm to Mihoubi.

11. Under Count XI: Declare that Mihoubi exercised reasonable business judgment under Section 6.10, is not liable to Penna, and is entitled to reasonable compensation and expense reimbursement under Sections 6.5 and 12.24, or by law or equity.

12. Under Count XII: Declare that Penna must indemnify Mihoubi for all costs, expenses, and reasonable attorney fees incurred due to Penna's violations of the MPI Operating Agreement, as required by Section 7.3.

[CONTINUED ON NEXT PAGE]

13.  Grant such other and further relief that the Court deems just and proper.

Respectfully submitted, June 13, 2025.

**D.R. Martin, LLC**

BY: /s/ David R. Martin
USDC NO.: 228008
1323 S.E. 17th St., PMB 99507
Ft. Lauderdale, FL 33316
Tel. (404) 822-3563
Email: dmartin@abogar.com
Counsel for plaintiff Bachir Mihoubi